UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEANDRE ARNOLD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00195-JMS-KMB |
| | ) | |
| ALLEN TRENT, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER**

After being convicted of throwing bodily fluids at another inmate, Petitioner Keandre Arnold was punished with the loss of 45 days of earned credit time, in addition to certain other non-custodial sanctions. Mr. Arnold has filed a Petition for a Writ of Habeas Corpus, [Filing No. 1], and a Motion for Court Assistance Regarding Filing Fees, [Filing No. 20]. The filing fee has been paid, [Filing No. 13 (receipt for payment of the filing fee)], so his Motion is **DENIED AS MOOT**. [Filing No. 20.] The Court proceeds to evaluate Mr. Arnold's Petition.

**I.**
**LEGAL BACKGROUND**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

1

## II.
### FACTUAL BACKGROUND

On November 24, 2024, Sergeant R. Kartchner filed a Conduct Report against Mr. Arnold, which alleged as follows:

> On 11/24/2024 at approximately 4:16 am I, Sgt. R. Kartchner, was assigned to work G cellhouse when the suicide companion, incarcerated individual Pouriet-Gannett, Rafael #286214, informed me that the incarcerated individual he was watching had thrown an unknown liquid substance on him. Cell 12 on 2D incarcerated individual Arnold, Keandre #201948 threw the liquid on the suicide companion.

[Filing No. 14-1 at 1.]

Sergeant Kartchner charged Mr. Arnold with Offense A-102, Battery Against Offender, defined as "[c]ommitting battery against another incarcerated individual (1) with a weapon; (2) with bodily fluids, including but not limited to saliva, urine, feces, semen, or blood; or (3) resulting in serious bodily injury."  [Filing No. 14-12 at 2.]  "Battery" is defined as "[k]nowingly or intentionally touching another person in a rude, insolent or angry manner; or in a in a rude, insolent, or angry manner placing any bodily fluid or bodily waste on another person."  [Filing No. 14-11 at 3.]

At screening, Mr. Arnold pleaded not guilty.  [Filing No. 14-2 at 1.]  Mr. Arnold requested a review of the camera footage covering the incident.  [Filing No. 14-2 at 1.]  The Hearing Officer, Sergeant J. Ernest, reviewed the video footage and provided a video summary:

> I, Sgt. J. Ernest, reviewed video footage for case ISR-24-11-003348.  At 2:16am, II Pouriet-Gannett is sitting in front of cell 12-20 writing something.  At this time, II Arnold is seen throwing a liquid out of cell 12-2D towards II Pouriet-Gannett. II Pouriet-Gannett then stands up and goes to the 20 range door to talk to an officer.

[Filing No. 14-6 at 1.]

Mr. Arnold asked another offender Ajaylan Shabazz for a witness statement answering the question, "Did I assault that guy?" [Filing No. 14-2 at 1.]  Mr. Shabazz stated that "I did not see Keandre Arnold assault anyone.  Him and a suicide companion were arguing and that's as far as it

2

went. Nobody physically assaulted anyone with physical force, bodily fluids, or any other type of assault that would be considered 'battery' except 'verbal.'" [Filing No. 14-7 at 1.] Mr. Arnold also asked for a witness statement from a different offender named Lawrence Carpenter, asking, "Did I assault that guy?" [Filing No. 14-7 at 2.] Mr. Carpenter answered, "No he did not." [Filing No. 14-7 at 2.]

At Mr. Arnold's disciplinary hearing, he stated that "I didn't have anything on me to throw the liquid." [Filing No. 14-5 at 1.] Based on Mr. Arnold's statement, staff reports, witness statements, and video evidence, Sergeant Ernst found Mr. Arnold guilty. [Filing No. 14-5 at 1.] Sergeant Ernst punished Mr. Arnold with certain non-custodial sanctions and a loss of 45 days of earned credit time. [Filing No. 14-5 at 1.]

Mr. Arnold appealed his conviction, providing the following statement, in full:

> I requested a witness statement from the victim. Check the screening officer's body camera when she brought the camera review and I told this to Ofc. Solomon [to] check his body camera as well. I stand by [my Disciplinary Hearing Board] statement. I proved via camera footage nothing was on the alleged victim [and] at no point did he wipe anything from his person and the evidence shows nothing on him and further proves I was seen waving my hand but nothing in them not any object or container or liquid in my hands. Furthermore, I can't provide a [Disciplinary Hearing Board] case number [because] I was taken from [general population] to [the restricted housing unit] and not allowed to bring anything and it takes up to 15 business days to appeal a facility directive[.] [T]o receive property is the same so how can I provide the case no within compliance when you subjected me to a facility directive that intrudes it.

[Filing No. 14-8 at 1.]

Reviewing Mr. Arnold's appeal, Officer Christina Conyers stated that "I see zero due process errors. I reviewed the video, and I see where the suicide companion is sitting and writing and not talking to anyone, and gets up and goes to the door, comes back to the chair where he wipes his face with his arm of his coat, and uses his foot and sweeps the floor. Appeal denied." [Filing No. 14-8 at 2-3.]

3

Mr. Arnold appealed to the Final Reviewing Authority, providing the following statement, in full:

> Camera footage is clear I had no "container" or any "object" in my hands in which I could hold a liquid substance, the alleged victim had no evidence of any liquid on his face or clothing[.] [A]ll it shows is a heated conversation and me waving my hands in various directions while arguing with the alleged victim while he stood and walked to the door[.] [H]e did not once wipe his face or wipe any liquid substance from his person because there was nothing on him. I was wrote up because [of] an inmate who told a Sgt. to write me up and she did because of a personal relationship they had. I had various witnesses claiming I didn't throw anything on him. Sgt. Ernest claim[s] the camera "showed" a liquid coming from my cell[.] [T]hat is impossible and false I request the footage be sent to the final reviewing authority reviewing division because all I did was move my hands back and forth then [wave] the alleged victim off[.] [N]othing was in my hands period. I turned in my appeal the day of [the] hearing & seek to exhaust state remedies and seek federal relief.

[Filing No. 14-9 at 2.]

The Final Reviewing Authority denied his appeal. [Filing No. 14-9 at 1.] A few months later, without changing Mr. Arnold's sanctions, an Appeal Review Officer downgraded Mr. Arnold's convicted offense from A-102, Battery Against Offender, to B-212, Battery Against Incarcerated Individual. [Filing No. 14-10 at 1.] B-212, Battery Against Incarcerated Individual is defined as "[c]ommitting a battery against another incarcerated individual." [Filing No. 14-12 at 5.] "Battery" is defined as "[k]nowingly or intentionally touching another person in a rude, insolent or angry manner; or in a in a rude, insolent, or angry manner placing any bodily fluid or bodily waste on another person." [Filing No. 14-11 at 3.]

Mr. Arnold has filed a Petition for a Writ of Habeas Corpus. [Filing No. 1.] Mr. Arnold argues that he was denied an impartial decisionmaker, that the evidence against him was insufficient, and that he was unlawfully denied an opportunity to present a witness statement from the alleged victim.

## III.
### DISCUSSION

The Respondent has argued that Mr. Arnold has not exhausted some of his arguments, so before proceeding to the merits of Mr. Arnold's claims, the Court addresses exhaustion.

**A.     Exhaustion**

The Respondent argues that Mr. Arnold did not exhaust his argument that he did not have an impartial decisionmaker because he did not raise that argument in his appeal to the facility head. [Filing No. 14 at 7.] The Respondent argues that Mr. Arnold has not presented a reason to excuse his procedural default. [Filing No. 14 at 8-9.]

Mr. Arnold does not address the Respondent's argument about exhaustion. [*See generally* Filing No. 19 at 1-2.]

In Indiana, only the issues raised in a timely appeal to the Facility Head and then to the Final Reviewing Authority may be raised in a subsequent petition for writ of habeas corpus unless a showing of cause and prejudice or a miscarriage of justice has been made. *See* 28 U.S.C. § 2254(b)(1)(A); *Washington v. Boughton*, 884 F.3d 692, 698 (7th Cir. 2018); *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002); *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "A procedural default will bar a federal court from granting relief on a habeas claim unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or, alternatively, he convinces the court that a miscarriage of justice would result if his claim were not entertained on the merits." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (citation omitted).

Mr. Arnold did not raise his argument about an impartial decisionmaker in his first appeal before the Facility Head. [Filing No. 14-8 at 1.] He argued that he requested a witness statement from the "victim," Mr. Pouriet-Gannett, and that video evidence proves that he did not throw bodily fluids at Mr. Pouriet-Gannett. [Filing No. 14-8 at 1.] Only at the level of the Final Reviewing

Authority did Mr. Arnold argue that the charging officer had an improper relationship with the victim, but that was too late. [Filing No. 14-9 at 2.] Mr. Arnold does not address the questions of cause and prejudice for his failure to exhaust in his reply brief. [Filing No. 19.] Consequently, the Court holds that Mr. Arnold has procedurally defaulted his claim that he was denied an impartial decisionmaker.

Nonetheless, in the interest of being thorough, the Court addresses the argument.

### B.     Impartial Decisionmaker

Mr. Arnold argues that he was denied an impartial decisionmaker. [Filing No. 1 at 4.] He states that the alleged victim set him up in retaliation for the argument they were having. [*See* Filing No. 1 at 3-4.] He states that he has often complained of biased decisionmaking in disciplinary hearings, and because there is zero evidence he is guilty, the only reason he could have been convicted was due to prejudice. [Filing No. 1 at 4.]

The Respondent argues that there is no evidence that the Hearing Officer was involved in the conduct leading to Mr. Arnold's charge or involved in the investigation, and that an adverse ruling alone does not mean the Hearing Officer was not impartial. [Filing No. 14 at 10.] The Respondent states that even if Mr. Arnold was retaliated against, his protections against retaliation are the due process protections of the disciplinary hearing proceedings under *Wolff*. [Filing No. 14 at 11.]

Mr. Arnold replies that the alleged victim planned to set him up and that the camera footage shows the "alleged victim 'pretend[ed]'" to be struck by bodily fluids. [Filing No. 19 at 1.]

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill,* 472 U.S. at 454. Claims that the petitioner was denied an impartial decisionmaker are rarely meritorious. This is because hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary and because hearing

officers are only deemed impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Piggie v. Cotton*, 342 F.3d 660, 666-67 (7th Cir. 2003).

In this case, Mr. Arnold provides no evidence that the Hearing Officer was involved in the conduct leading to his offense or its investigation. He argues only that because he was convicted, the Hearing Officer must have been biased. But "disagreement with the outcome of his hearing and the [Hearing Officer's] decision does not implicate bias. He has not alleged that the [Hearing Officer] was directly or substantially involved in the factual events or investigation underlying his charge." *Flagg v. Warden*, 2021 WL 4066678, at *2 (S.D. Ind. Sept. 7, 2021). Further, he has provided no evidence of an improper relationship between the charging officer and Mr. Pouriet-Gannett. *See Eads*, 280 F.3d at 729 (observing that "[i]nsistence on a timely complaint of a potentially disqualifying personal relationship is imperative, since there is a danger that prisoners will fabricate such claims or base them on groundless rumors. The later the claim is made, the likelier it is to be a last minute invention.") (citation omitted).

As for the argument of retaliation, "[p]risoners have a right to be free from arbitrary actions by prison officials," including false disciplinary actions based on retaliation. *Burton v. Davis*, 41 F. App'x 841, 845 (7th Cir. 2002). However, "the protection from such actions is found in the procedures mandated by due process." *Id.* Therefore, "retaliatory motive in the filing of a disciplinary charge is not a ground for relief if the subsequent disciplinary proceedings are held in accordance with due process." *Lee v. Berge*, 14 F. App'x 690, 693 (7th Cir. 2001). "[A]s long as procedural protections are constitutionally adequate, [a court] will not overturn a disciplinary decision based solely because evidence indicates the claim was fraudulent." *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999). If the procedural due process requirements of *Wolff*

7

are satisfied, a reviewing court's role "is limited to determining whether there was sufficient evidence to support the [hearing officer]'s decision." *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987) (citing *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984)). In this case, even if there were a fraudulent or retaliatory claim, Mr. Arnold's protection would be from the procedural due process requirements of *Wolff*, which as the Court will explain, were not otherwise violated.

Mr. Arnold is not entitled to habeas relief based on his claim that he was denied an impartial decisionmaker.

C.     **Sufficiency of the Evidence**

Mr. Arnold argues that there is no evidence that he threw bodily fluid on Mr. Pouriet-Gannett. [Filing No. 1 at 3.] He maintains that the video footage only shows Mr. Pouriet-Gannett "writing & and then walk to the door then wipe his face as if he was attacked with liquid," when in fact he said he was planning to set Mr. Arnold up on phony charges because they were arguing about whether Mr. Arnold was a child molester. [Filing No. 1 at 3.]

The Respondent argues that there is some evidence that Mr. Arnold threw "an unknown liquid substance" "on his suicide companion," Mr. Pouriet-Gannett, referencing the Conduct Report and the video footage. [Filing No. 14 at 15.] The Respondent states that Mr. Arnold's witness's testimony cuts against him because Mr. Shabazz said that Mr. Arnold and Mr. Pouriet-Gannett were arguing, supporting evidence for Mr. Arnold throwing a substance in a "rude, insolent, or angry manner." [Filing No. 14 at 15.]

Mr. Arnold reiterates his claims in his reply. [Filing No. 19.]

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat*, 288 F.3d at 981. "[T]he relevant question is whether there is any evidence

8

in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

The Respondent has filed the video footage with the Court, which the Court has reviewed. [Filing No. 18 at 1 (receipt for CD filed ex parte with the Court).] Mr. Arnold is correct that Mr. Pouriet-Gannett was sitting, and he is correct that Mr. Pouriet-Gannett got up and walked away. [Filing No. 18 at 3:04-3:17.] But he is incorrect that Mr. Pouriet-Gannett fabricated the incident. Before Mr. Pouriet-Gannett stood up, Mr. Arnold made a throwing motion with his arm, then out from his cell flew several glimmering droplets sprayed upon Mr. Pouriet-Gannett. [Filing No. 18 at 3:04-3:12.] This footage clearly demonstrates that Mr. Arnold thew bodily fluid at Mr. Pouriet-Gannett, and hence there was some evidence to support his conviction.

Mr. Arnold is not entitled to habeas relief on the ground of insufficiency of the evidence.

### D.     Right to Present Witnesses

Mr. Arnold argues that he "requested a witness statement from the alleged victim who[] intended to confess he set petitioner up," and did not receive it. [Filing No. 1 at 3.]

The Respondent argues that prison officials provided him "with all of the evidence he requested," including two witness statements. [Filing No. 14 at 12.] The Respondent states that Mr. Arnold "never requested" a witness statement from the "alleged victim," Mr. Pouriet-Gannett, and that in any event, the video clearly shows the offense. [Filing No. 14 at 12-13.]

Mr. Arnold generally reiterates his arguments in reply. [Filing No. 19.]

An inmate "facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. However, "[p]rison

9

administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017). So if an inmate "failed to make such a request" for a witness statement "either before or at the hearing, then the CAB could not have denied him due process by not considering the request." *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002).

In this case, the screening report shows that Mr. Arnold requested a witness statement from Mr. Shabazz. [Filing No. 14-2 at 1.] He later received witness statements from both Mr. Shabazz and Mr. Lawrence. [Filing No. 14-7 at 2.] The disciplinary hearing report does not show that Mr. Arnold requested any witness statement from Mr. Pouriet-Gannett. [Filing No. 14-5 at 1.] Having provided no evidence that he requested a witness statement from Mr. Pouriet-Gannett, Mr. Arnold cannot show that his due process rights were violated by being unlawfully prevented from presenting witnesses.

Mr. Arnold is not entitled to habeas relief on the ground of being unlawfully prevented from presenting witnesses.

### E.     Notice of the Charge

The Respondent argues that Mr. Arnold had adequate notice of the charge, [Filing No. 14 at 16-18], but because Mr. Arnold does not raise that ground for habeas relief, the Court does not consider it.

### IV.
### Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in Mr. Arnold's case, and there was no constitutional infirmity in the proceeding that entitles him to the relief he seeks. Accordingly, Mr.

Arnold's Petition for a Writ of Habeas Corpus, [1], is **DENIED**, and the action is dismissed. Mr. Arnold's Motion for Court Assistance Regarding Filing Fees, [20], is **DENIED AS MOOT**.

Final judgment shall issue by separate order.

Date: 7/23/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

KEANDRE ARNOLD
Psychiatric Unit
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Abigail Recker
INDIANA ATTORNEY GENERAL
abigail.recker@atg.in.gov